## M. W. McClane *v.* Peoples Light & Heat Company, Appellant.

*Lease—Oil and gas lease—Evidence—Question for jury.*

In an action to recover rentals under an oil and gas lease, the defendant claimed that the plaintiff had reduced the rental in consideration of the defendant continuing to operate the well. Plaintiff admitted that he had offered to reduce the rental $50.00 per annum, and no more, but that this offer was rejected. He denied that he had agreed in any general way to reduce the rental, but admitted that he had said he would rather reduce the rental than have the well pulled. *Held*, (1) that as this raised a disputed question of fact, as to which the testimony was all verbal, it was for the jury to determine from the conflicting testimony whether there had been an agreement to reduce the rental; (2) that a judgment and verdict for the plaintiff for the full amount of the rental provided by the lease would not be disturbed by the Supreme Court.

Argued Oct. 19, 1896. Appeal, No. 56, Oct. T., 1896, by defendant, from judgment of C. P. Washington Co., Feb. T., 1894, No. 73, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover rentals under oil and gas lease. Before McILVAINE, P. J.

At the trial it appeared that the defendant was bound to pay the plaintiff under a gas lease $500 per annum from the time a well was completed, "and as long thereafter as gas is produced in paying quantities." The lease further provided that "if gas is found, but not in paying quantities to warrant the second party in marketing the same, the first party shall have the right to retain the casing in the well at the cost thereof, less what it would cost to pull the same." The defendant introduced testimony tending to show that the plaintiff had agreed to reduce the rental. The plaintiff, when called by the defendant as for cross-examination, testified, "I offered to make a reduction but it was not accepted. Q. What offer did you make as to their reduction? A. Fifty dollars per year. Q. That is, you would take $450 in place of $500? A. Yes, sir." The plaintiff further testified as follows:

" Q. Now, the second payment you received was in January, 1890? A. Yes, sir; this was after the fourth payment was made. Q. After the first six months' rental was paid, or one year's rental? A. It was after the last payment they made me, whatever time that was; they made me four payments on that well, four semiannual payments; this conversation occurred when I went to their office for my pay, I was informed they wouldn't pay it any longer. Q. Well, that was the last time that they paid you, was it? A. That was after the last payment; that is, the conversation between Mr. Streator and I. Q. And what reason did they give? A. The well wasn't worth the money. Q. Was there any agreement entered into at that time between you and them as to a reduction of the rental? A. Well, Mr. Streator told me in the conversation that they would pull the well, as they term it, if I didn't reduce; I told him that I would rather reduce the rental than to have the well pulled. Q. No figures, however, were named? A. There were

no figures named.   Q. You told him you would rather reduce
the rental than to have the well pulled out?    A. Yes, sir.
Q. Well, the company then continued to use the well, did
they?· A. Yes, sir.   Q. After that arrangement was made, was
there anything after that said as to what the reduction would
be, and if so, when?   A. After the well was turned out, almost
two years afterwards, I was· asked what that reduction would
be.   Q. At that time I believe Mr. Caldwell was dead?   A. Yes,
sir, I think so.   Q. I want to ask you if you didn't say, also,
at that time, at one of these conversations, that you would make
it right?   A. I did not.   Q. Did you say you would, do what
was right?   A. I have no recollection of saying anything of
the kind."

The court charged in part as follows :

The question as to whether this was a paying well or not
must be considered in reference to the business that the defend-
ant was in at this place, and the manner in which they were
supplying gas.   And the moment it appeared to the company
that it would not pay them any longer in their business, as
they were prosecuting it, to retain this gas well and keep it in
their line at the price of $500, they had a right to turn it out;
but the presumption is that as long as they used the gas and
turned it into the line, it was a paying well; I say that is the
presumption.   And it is a part of the contract that as long as it
is used in that way they were to pay $500 a year rental for the
gas well.   So the plaintiff starts with that in his favor.   [It is
a fact that they used the gas for a year and ten months, and it
has not been paid for ; and it is a further fact in his favor that
the contract specifically provides what the company shall pay
for each well; and on the plaintiff's showing he is entitled to
receive $500 for the first year, with interest on it from the time
that it ought to have been paid up to the present time, and at the
rate of $500 for ten months, with interest up to the present time.
Now I say, on the plaintiff's case, with nothing else in the case,
Mr. McClane would be entitled to recover that amount.   But
the defendant company says no, he is not entitled to that much,
for the reason that there was a subsequent parol agreement
between the plaintiff and the company (and if the parties were
competent to make the original agreement or contract they were

also competent to modify its terms), and the question now for you to determine is, whether or not there was an agreement between Mr. McClane and the defendant company, or its authorized superintendent or agent, that if the well was left in the line for this year and ten months there was to be a reduction in the price. Now, that is the first question raised by the defendant; did Mr. McClane and Mr. Streator, as the representative of the company, come to an agreement or understanding that if this gas well was left in the line, or the gas from the well was used, that there should be a reduction in the price.] [1]

Now, a contract is nothing more or less, gentlemen, than a union of two minds; a coming together, an agreement upon a set of facts upon which both parties act. Now, was there such an agreement, and did this company, in pursuance of that agreement, use this well believing that it had a contract with Mr. McClane that there should be a reduction in the price of the well. Now, it is not necessary in the establishment of this agreement to show that the price was agreed upon or the amount of the reduction. Of course it would have been more satisfactory, it would have been, perhaps, more business-like (not wishing however to criticise the manner in which the business was done), but it would have been more business-like to have agreed upon what the reduction should have been, but it was not necessary, if you believe there was an actual agreement to reduce the price, and the gas was used by the company by reason of that agreement; I say such an agreement would be valid and binding upon Mr. McClane, and then the law would fix the price, and that would be such a sum as the jury would determine under the testimony to be a reasonable price for the well, or a reasonable reduction from the original price; and the jury would have to find that from the testimony that is introduced in the case. You can sell a horse or a cow, or any article that you see fit, to a man, and allow him to take it from you without fixing a price, and in such case the law would supply what you had left out, by allowing the price to be fixed by hearing testimony as to what the market price of the animal was, or what the article was worth. I tell you to come to my place and do a certain amount of work, and I don't say a word about the price; you do it; the law presumes that I will pay what is the market price for such labor as that performed. So here, if you find there was an

actual or consummated agreement to reduce the rental, then the law would say that the presumption was that the party meant to fix it at what would be a fair price for both parties, considering the market value of gas.

[Now, gentlemen, you have the questions to be decided in the case and we leave them with you.  We say, starting out, that Mr. McClane is entitled under the written agreement to $500 for the first year, and to a proportionate part of the $500 for the ten months, with interest on each from the time it should have been paid; but the defendant, in answer to this, says he is not entitled to recover on the written contract, for the reason that there was a subsequent parol agreement.  Now, if the defendant has failed to make that out to your satisfaction, then Mr. McClane may recover on the written contract; on the other hand, if the defendant has satisfied you that there was an agreement to reduce the rent, and it was acted upon, then you must determine how much reduction should be made.] [2]    The case is with you.

These gentlemen on either side have their respective claims figured up, and we will allow them to send the calculations out with you, but you are not bound by what they send out; it is merely to aid you, if you come to the conclusion that either one of them is right; but you can find either of these sums, or any amount between those sums you think the evidence justifies, but you must have evidence on which to base your verdict.

Verdict and judgment for plaintiff for $1,100.31.  Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*A. M. Todd*, with him *James A. Wiley*, for appellant.—We submit that the wrong done to the appellant is: First, that under the undisputed testimony the question as to a reduction of the rental should not have been left to the jury, but that the court should have instructed them that such reduction was agreed upon; second, that the jury could in no event determine the amount due the plaintiff to be the full rental fixed by the supplemental lease.

*John H. Murdoch*, for appellee.—If there is any evidence which would justify even an inference of a disputed fact, that

evidence must be submitted to the jury: Hill v. Trust Co., 108 Pa. 1; Gates v. Watts, 127 Pa. 20; Hineman v. Matthews, 138 Pa. 204; McFarland v. Newman, 9 Watts, 55; Brubaker v. Okeson, 36 Pa. 519; Maynes v. Atwater, 88 Pa. 496.

PER CURIAM, November 11, 1896:

While it is true that the plaintiff admitted that he had offered to reduce the rental $50.00 per annum, it is also true that that offer was rejected by the defendant. The plaintiff denies that he agreed in any other way than this to make any reduction in the rental, and he especially denies that he agreed " to make it right," or that he agreed in any general way to reduce the rental. This raised a disputed question of fact as to which the testimony was all verbal and therefore had to be submitted to the jury. The plaintiff admitted that he said he would rather reduce the rental than have the well pulled, but that was not enough to make an agreement to reduce.

· Judgment affirmed.